IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Margaret Bishop, | ) | C/A No.:1:09-1956-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable R. Bryan Harwell's February 9, 2010 order referring this matter for disposition. Plaintiff Margaret Bishop ("Plaintiff" or "Claimant") brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Insurance Benefits ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards.

I.      Relevant Background

        A.      Procedural History

        On January 30, 2006, Plaintiff filed an application DIB and SSI, claiming disability as of November 17, 2005. Tr. 86–90. Plaintiff claimed to be disabled as a

result of reflex sympathetic dystrophy ("RSD"), concentration problems, high cholesterol, blisters on her feet, and pain, swelling, and spasms in her legs. Tr. 112, 122, 136. Plaintiff's applications were denied initially and on reconsideration. Tr. 50–59, 63–66. Administrative Law Judge Richard Vogel ("ALJ") held a hearing on July 3, 2008 at which Plaintiff appeared with her attorney and testified. Plaintiff's husband also testified at the hearing, as did a Vocational Expert ("VE"). In an August 8, 2008 decision, the ALJ found Plaintiff not to be disabled. Tr. 20–28. On June 8, 2009, the Appeals Council denied Plaintiff's request for further review, making the ALJ's decision the Commissioner's final administrative decision. Tr. 1–5. On July 23, 2009, Plaintiff filed the present action seeking judicial review of the Commissioner's decision.

B.    Plaintiff's Background and Medical History

Plaintiff was 39 years old as of the date she alleges she became disabled and was 42 years old as of the date of the ALJ's decision. Tr. 50–53, 86. She has a high school education and attended college for one year. Tr. 32, 116. Her past relevant work ("PRW") was as an insurance agent/claims representative and as a hairdresser. Tr. 113.

The medical evidence showed that, between January 2003 and July 2005, Timothy Jones, M.D., treated Plaintiff for gastrocolic reflux with gastroesophageal reflux disease (GERD), bronchitis, hyperlipidemia, amenorrhea, RSD/chronic pain, and chronic constipation. Tr. 155–57, 300–02, 421–24, 427, 431, 433–44. In September 2005, she saw Dr. Jones for evaluation of neck pain after falling down the stairs at her condominium. Tr. 153–54. A cervical spine x-ray showed post-surgical changes at C4-5

(anterior cervical discectomy and fusion). It also showed mild anterolisthesis at C4-5, fusion across the disc space, mild degenerative changes at C5-6, and no evidence of acute fracture. Tr. 278, 318, 378. In October 2005, Plaintiff saw Dr. Jones for evaluation of possible memory problems. Dr. Jones noted that Plaintiff's pain medications may have been contributing to her cognitive slowing. He found no identifiable area of cognitive deficit. Tr. 296–97.

Dr. Jones ordered an abdominal ultrasound, which was performed on November 4, 2005, and showed no evidence of cholelithiasis and a mildly dilated common bile duct. Tr. 167. A November 15, 2005 abdominal CT scan showed minimal intrahepatic ductal prominence and mild extrahepatic ductal dilatation with no specific etiology apparent. Tr. 166.

On November 21, 2005, Plaintiff saw a gastroenterologist, Neven Hadzijahic, M.D., with complaints of abdominal pain. Dr. Hadzijahic found that she had normal muscle tone and a soft, non-distended abdomen with epigastric tenderness to palpation. He noted that her postprandial epigastric pain with nausea and vomiting was very suggestive of biliary-type symptoms with dilated common bile duct and mild dilatation of the intrahepatic ductal system, chronic GERD, which was likely caused by gastroparesis and chronic narcotic use, and chronic constipation secondary to narcotics. He recommended further testing and continued her medications. Tr. 178, 183–86. The following day, a magnetic resonance cholangiopancreatography showed minimal dilation of the extrahepatic common duct and a small nodular impression on the upper aspect of

the distal duct and possibly the papillary muscle or mucosal duct. Tr. 275. A November 29, 2005 hepatobiliary scan was normal. Tr. 187. On December 2, 2005, an upper endoscopy with endoscopic ultrasound showed mild dilatation of the common bile duct without obstruction, non-erosive gastritis, and a normal gallbladder and pancreas. Tr. 190.

On December 6, 2005, Plaintiff saw Dr. Jones for a follow-up visit concerning her abdominal pain. He diagnosed abdominal pain of undetermined etiology and adjusted her medications. Tr. 149–50. Plaintiff returned to Dr. Hadzijahic on December 12, 2005, reporting improved epigastric pain. She also reported nausea, reflux symptoms, bloating, and constipation. Dr. Hadzijahic found she was in no apparent distress and had left upper quadrant tenderness to palpation. He diagnosed chronic epigastric abdominal pain, likely related to gastroparesis and GERD, chronic nausea due to narcotic induced gastroparesis, and mild dilatation of the common bile duct. He adjusted her medications. Tr. 177, 181–82.

On January 10, 2006, Plaintiff returned to Dr. Hadizijahic with complaints of diffuse upper-abdominal pain and constipation. She also complained of upper-body musculoskeletal pain not controlled by MS Contin. Tr. 177. He diagnosed chronic abdominal pain likely related to constipation, dilated common bile duct with normal liver function tests, and chronic pain syndrome. He prescribed Percocet for break-through pain in addition to MS Contin. Tr. 176–77.

On January 13, 2006, Plaintiff returned to Dr. Jones for follow-up to her abdominal pain. She complained of worsening RSD and non-specific abdominal pain. Tr

147. Dr. Jones noted he found no etiology for her pain. On examination, he found that she had a mildly protuberant abdomen with generous, low-pitched bowel sounds. She had no extremity clubbing, cyanosis, or edema. She had no musculoskeletal deficits and her muscle bulk, tone, and strength were symmetrical. Dr. Jones diagnosed abdominal pain of unclear etiology, hyperlipidemia, RSD under "reasonable control," and "social issues." He prescribed medications, including Wellbutrin and OxyContin. Tr. 147–48.

On January 31, 2006, Plaintiff told Dr. Hadzijahic that she had been nauseous for two weeks. He adjusted her medications. Tr. 172. Plaintiff did not keep her scheduled February 13, 2006 appointment with Dr. Jones. Tr. 175. On February 20, 2006, Plaintiff saw Dr. Jones, reporting improvement in the regularity of her bowel habits. She reported two spontaneous bowel movements without laxatives and indicated that her nausea was controlled. Dr. Jones found that she was in no apparent distress. Her abdomen was soft and non-distended, but tender. Dr. Jones diagnosed chronic nausea and epigastric pain caused by gastroparesis. He also diagnosed chronic pain syndrome and chronic constipation caused by narcotic use. He adjusted Plaintiff's medications. Tr. 172–73.

On March 20, 2006, Plaintiff went to Lowcountry Medical Associates with complaints of severe leg pain. She also complained of possible RSD and swelling in her legs. Tr. 410–11.

On April 4, 2006, Plaintiff saw Dr. Jones for evaluation of bilateral extremity edema. She reported improvement in her constipation with medications. Dr. Jones found she had 1+ extremity edema of the distal lower extremities. The right leg was slightly

larger in circumference than the left. Dr. Jones diagnosed bilateral lower extremity edema and recommended testing. Tr. 408–09. On April 7, 2006, Thomas Wooten, M.D., diagnosed Plaintiff with RSD and administered an epidural block injection. Tr. 213, 374. On April 26, 2006, Dr. Wooten noted that Plaintiff's bilateral leg pain was better for 20 hours after her previous block, after which she had a slight decrease in her pain level over two weeks. He administered a lumbar epidural block. Tr. 207, 251. On May 2, 2006, Dr. Wooten administered an epidural steroid injection. Tr. 203–05. On May 7, 2006, Plaintiff went to the emergency room with complaints of left hip, knee, and ankle pain. She was diagnosed with exacerbation of RSD and was in no acute pain when discharged. Tr. 194–200.

On May 11, 2006, Plaintiff saw psychiatrist Jayne McKenzie, M.D., for evaluation of mood disorder secondary to medical illness and chronic pain. Plaintiff complained of insomnia. She reported that she recently married her fourth husband and rated her pain as a seven or eight on a ten-point scale. Dr. McKenzie found that she was neatly dressed, well groomed, and alert and oriented times four. She also noted Plaintiff was fidgety and had restricted affect, her speech was normal, her mood was pretty positive in general, and her thought processes were logical. Her cognition, abstractive abilities, memory, insight, and judgment were intact. Dr. McKenzie diagnosed mood disorder and assigned a GAF score of 55. Tr. 484–87.[1] On June 2, 2006, Dr. McKenzie found Plaintiff's mood was

---

[1] As referenced by the Commissioner on page 7 of in his brief, the GAF (Global Assessment of Functioning) scale considers psychological, social, and occupational functioning on a hypothetical continuum of mental health or illness. A GAF score of 51-

depressed and her affect was restricted. She noted that Plaintiff's sleep had improved. She prescribed Cymbalta and Topomax. Tr. 483.

On June 27, 2006, Plaintiff saw Dr. Jones for follow-up on hyperlipidemia and chronic pain. Dr. Jones noted she was doing relatively well on Avinza. Tr. 493. Dr. Jones diagnosed chronic pain syndrome and prescribed Neurontin. *Id.* His notes indicated that Plaintiff was applying for disability and that he advised her to follow-up with a pain management specialist for determination of the degree of disability from chronic pain. *Id.* In July 2006, Dr. Jones wrote a letter that indicated Plaintiff had been "recently limited in her ability to meaningfully perform her job [in insurance claims and sales] due to a series of medical conditions, including a reflex sympathetic dystrophy of the arms [] which exacerbate[d] her depression and contribute[d] to poor concentration." Tr. 234.

On July 6, 2006, Plaintiff saw Dr. McKenzie. She reported she was able to sleep. Her mood was a six on a ten-point scale, and Dr. McKenzie noted that her affect was restricted. Dr. McKenzie adjusted Plaintiff's dosages of Topamax and Cymbalta. Tr. 483.

On July 10, 2006, Plaintiff saw Dr. Jones for complaints of edema and blisters. Dr. Jones diagnosed intermittent edema and pustular eruptions on both feet. Tr. 407.

---

60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers)." Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* (*DSM-IV*) (4th ed. 1994).

On August 25, 2006, state agency psychologist Edward Waller, Ph.D. reviewed the medical evidence and found that Plaintiff had a medically determinable affective-disorder impairment he characterized as a mood disorder secondary to pain. Tr. 223. In completing the Psychiatric Review Technique information, *see* Tr. 220–33, Dr. Waller found that Plaintiff's disorder caused no restrictions on her activities of daily living, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. He found that she had mild difficulties maintaining social functioning. Tr. 230.

Plaintiff returned to Dr. McKenzie on October 6, 2006, with complaints of dizziness and running into a wall. She reported increased pain in her right side and continued memory problems. Dr. McKenzie found that her mood was variable and her affect was restricted and adjusted her medications. Tr. 482.

On October 17, 2006, Plaintiff saw Dr. Jones with complaints of pain, "head to toe, with right ear pain." She complained of RSD-type symptoms in her upper extremities and hips. On closer questioning, she denied systemic pain, but had more vague complaints of pain throughout. She had no musculoskeletal deficits with symmetrical muscle bulk, strength, and tone. Dr. Jones diagnosed chronic pain syndrome and right otitis externa and prescribed an increased dose of MS Contin. Tr. 405–06.

On November 27, 2006, Plaintiff saw Dr. McKenzie and reported walking into walls. She reported that she had no quality of life and that her mood was a four on a ten-point scale. Dr. McKenzie found that she had a restricted affect and was restless and fidgety. She prescribed Topamax, Cymbalta, and Ativan. Tr. 481. Plaintiff returned to Dr.

McKenzie on February 2, 2007. She reported that she had fallen five times since her November 2006 visit. She also used a cane and walked with a limp. Her pain was decreased with medications. Her appetite was reduced and her sleep was poor. Her mood was a five on a ten-point scale and her affect was restricted. Dr. McKenzie prescribed Cymbalta, Topamax, and Ativan. Tr. 481.

On February 6, 2007, Plaintiff saw Dr. Hadzijahic with complaints of chronic nausea, bloody stools, and left-upper-quadrant pain. She reported weight gain, in spite of nausea. Dr. Hadzijahic found she was in no apparent distress with soft, non-distended abdomen with epigastric and left upper quadrant abdominal tenderness, no palpable masses, and normoactive bowel sounds. He diagnosed chronic nausea, left-upper-quadrant abdominal pain, and episodes of hematochezia. He adjusted her medications. Tr. 472.

On March 16, 2007, an esophagogastroduodenoscopy ("EGD") study was generally normal, but it indicated ulcers in the antrum and bile in the body of the stomach. Tr. 369–70, 372. A colonoscopy showed no gross lesions to the cecum and hemorrhoids in the rectum. Tr. 371.

On March 26, 2007, Plaintiff saw Dr. McKenzie, reporting her mood as a five on a ten-point scale and her pain at an eight-and-one-half out of ten most of the time. Dr. McKenzie found that she had slightly restricted affect and continued her medications. Tr. 480.

On April 6, 2007, Plaintiff saw Dr. Hadzijahic for follow-up. He noted her EGD results showed multiple small gastric ulcers and evidence of significant bile reflux and that her colonoscopy was unremarkable. Tr. 237. On examination, he noted Plaintiff was in no apparent distress and had a soft, non-distended, non-tender abdomen with normoactive bowel sounds. Dr. Hadzijahic diagnosed gastric ulcers, gastroparesis, and irritable bowel syndrome ("IBS") with severe constipation. He adjusted Plaintiff's medications. Tr. 237.

On May 7, 2007, Plaintiff presented to Dr. McKenzie. She reported better sleep with Ativan. She reported that she was not falling any more or walking with a cane. She had a euthymic (nondepressed) mood, pain rated as an eight on a ten-point scale, and a slightly restricted affect. Dr. McKenzie prescribed Cymbalta, Topamax, and Ativan. Tr. 478–79.

On June 7, 2007, Plaintiff saw Dr. Hadzijahic with complaints of anorexia. She reported improvement in her epigastric pain with treatment. Dr. Hadzijahic found she had a soft, nondistended abdomen with mild epigastric tenderness and normoactive bowel sounds. He diagnosed chronic epigastric pain, history of gastric ulcers, and nausea, anorexia, and constipation secondary to long-term use of narcotics. He prescribed medications. Tr. 235.

On November 6, 2007, Plaintiff saw Dr. McKenzie with complaints of marital issues and excessive weight gain. She noted Plaintiff as having a blunted affect and prescribed the anti-depressant Prozac and adjusted Plaintiff's other medications. Tr. 477.

On December 4, 2007, Plaintiff reported to Dr. McKenzie that she had the blues and did not want to leave the house, but that things were better with her husband. Dr. McKenzie noted Plaintiff was "essentially stable," and prescribed Prozac. Tr. 477. On April 17, 2008, Plaintiff reported to Dr. McKenzie that Topamax helped her spasms and Prozac was "good." She said she no longer drove, as she was "absent minded" in the afternoons. She was having a "bad day," was depressed, and was in pain. Dr. McKenzie noted she smelled of cigarettes and had poor hygiene. She adjusted Plaintiff's medications. Tr. 476.

On May 15, 2008, Plaintiff saw Dr. Hadzijahic for complaints of nausea. He found she had a non-distended abdomen with mild diffuse abdominal tenderness, mostly in the epigastric area. Her bowel sounds were normoactive. Dr. Jones diagnosed chronic nausea, likely multifactorial caused by narcotics, chronic constipation, and IBS. He adjusted her medications. Tr. 359. On June 2, 2008, Plaintiff returned to Dr. Hadzijahic with complaints of constipation. She reported no bowel movements for one week. She also reported intermittent nausea with vomiting. Dr. Hadzijahic found she had a soft, non-tender abdomen without masses or distention. She had normal bowel sounds. Dr. Hadzijahic diagnosed chronic nausea and vomiting (likely multi-factorial, caused by narcotics), low abdominal pain, constipation, gastric ulcer by history, mild dilatation of the common bile duct, and internal hemorrhoids by history. Dr. Hadzijahic adjusted her medications. Tr. 358.

C.    Hearing Testimony

1.    Plaintiff's Testimony

At the July 3, 2008 hearing, Plaintiff testified that she had last worked as an insurance agent, but that she lost that job because she was unable to keep the hours it required. Tr. 34. She described problems with insomnia, noting that she typically slept a full night every fifth day. *Id.* She said she started experiencing problems with RSD after undergoing neck surgery. *Id.* She indicated she sometimes used a cane to get around. Tr. 36. She described problems of forgetfulness. Tr. 37. She also noted that she took pain medications every day. *Id.* She related that she had problems with crying spells and difficulty communicating at times. *Id.* She testified that she shared cooking duties with her husband and son. *Id.* She testified that her husband assisted her with household chores and her son drove her to buy groceries. Tr. 35–36. She indicated the RSD impacted her constantly and primarily affected her arms. Tr. 38. She further indicated that her RSD caused her to have a bad immune system, chronic pain, and forgetfulness. Tr. 39.

2.    Testimony of Plaintiff's Husband

Plaintiff's husband, Jamie Bishop also testified at the hearing. Mr. Bishop testified that he had been in counseling to learn how to address Plaintiff's changing moods. Tr. 42–43. He stated that he and Plaintiff's son did most of the housework. Tr. 43. He stated that Plaintiff had used a cane in the past and that she had fallen several times. He testified that it seemed to be quite difficult for her to recover from a minor fall. Tr. 43–44. He

also testified that Plaintiff had memory and concentration issues and problems with nausea and insomnia.  Tr. 44, 46–48.

### 3. The VE's Testimony

The ALJ asked the VE, Robert Brabham, Jr., the following hypothetical:

> Please assume a hypothetical worker the same age as the claimant, the same work history and education with a light exertional capacity only, to include no climbing, crawling or exposure to industrial hazards. No more than occasional overhead reaching A low-stress setting where there is no more than occasional decision-making, changes in the work setting, and a job with no more than occasional exposure to the general public.

Tr. 40.  The VE testified that such an individual could perform the light, unskilled jobs of hand packer, machine tender, and garment folder.  Tr. 40–41.

## II. Discussion

Plaintiff claims the ALJ erred by finding Plaintiff not be disabled as defined by the Act.  Although Plaintiff does not set out specific allegations of error in her brief, her argument focuses on Plaintiff's severe pain from her RSD and mentions limitations allegedly caused by other issues, as well.  Pl.'s Br. 3–5.

### A. ALJ Findings

In his decision dated August 8, 2008, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 17, 2005, the alleged onset date (20 CFR 404.1520(b). 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: reflex sympathetic dystrophy and depression (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.9679b) with no climbing, crawling or exposure to work hazards; no more than frequent overhead reaching; and accommodation for a sit/stand option at will in a low stress (defined as requiring only occasional decision-making and changes in work setting) environment with only occasional exposure to the general public.

6.  The claimant is unable to perform any past relevant work (20 CFR § 404.1565 and 416.965).

7.  The claimant was born on February 21, 1966 and was 39 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR  404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 17, 2005, through the date of this decision (20 CFR § 404.1520(g) and 416.920(g)).

Tr. 20–28.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines "disability" as follows:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of "disability" to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing past relevant work; and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any

step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Id.* If the Commissioner satisfies its burden, the claimant must then establish that she is unable to perform other work. *Id.; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Social Security Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether

the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); s*ee Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Although Plaintiff's brief contains a statement of facts and a brief summary of the Plaintiff's claimed chronic pain and limitations, she does not make specific arguments regarding why she believes the ALJ's decision is not supported by substantial evidence or

how she alleges the ALJ committed legal error. She concludes the brief with a sentence indicating her condition is "not improving," and that "in fact, [she] has new medical evidence that her condition has worsen[ed] [sic]." Pl.'s Br. 5. However, she does not further identify any claimed new evidence, nor would it be appropriate for the court to consider new evidence at this juncture. Having reviewed the evidence considered by the ALJ, the court affirms the ALJ's finding Plaintiff not to be disabled. The ALJ's decision is supported by substantial evidence and is free of legal error.

     1.     Substantial Evidence Supports the ALJ's Finding Regarding Plaintiff's Residual Functional Capacity.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: no climbing, crawling, or exposure to work hazards; no more than frequent overhead reaching; and accommodation for a sit/stand option at will in a low-stress (defined as requiring only occasional decision-making and changes in work setting) environment with only occasional exposure to the general public. Tr. 24–27. As defined by SSR 96-9p, RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical or mental activities." SSR 96-8p. In other words, one's RFC indicates the most a person can do, despite her impairments. *See id.*

Here, the ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence. As an initial matter, the court notes that none of Plaintiff's treating or examining physicians provided any statement or opinion as to Plaintiff's RFC that indicated there was no work she could perform. In fact, the only evidence of any of her treating or examining physician's concerning limitations on her abilities is a July 2006 letter from her treating physician, Dr. Jones, in which he opined that Plaintiff's physical and mental conditions limited her from performing her prior job as an insurance agent/claims representative. Tr. 234. *See Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991) (upholding finding of nondisability when none of claimant's examining physicians gave an opinion that claimant was unable to perform any work).

Here, the ALJ noted that Dr. Jones' opinion was the only opinion of record relating to Plaintiff's RFC at all, and he appropriately considered this opinion and concurred with Dr. Jones that Plaintiff was unable to perform her past work as an insurance agent/claims representative. *Id.* This finding and the ALJ's findings concerning what Plaintiff could and could not do are supported by substantial, objective record medical evidence. For example, in November 2005, Dr. Hadzijahic found that Plaintiff had normal muscle tone. Tr. 178, 183–86. In January 2006, Dr. Jones found that she had no extremity clubbing, cyanosis, or edema. He also found that she had no musculoskeletal deficits and her muscle bulk, tone, and strength were symmetrical. Dr. Jones found that her RSD was under "reasonable" control. Tr. 147–48. In October 2006, Dr. Jones found that Plaintiff had no musculoskeletal deficits with symmetrical muscle bulk, strength, and tone. Tr. 405–06.

The objective medical evidence also supported the ALJ's findings with respect to Plaintiff's mental limitations. In May 2006, Dr. McKenzie found that Plaintiff was neatly dressed, well groomed, and alert and oriented times four. She was fidgety and had a restricted affect, but her speech was normal, her mood was pretty positive in general, and her thought processes were logical. Her cognition was intact. She also had intact abstractive abilities, memory, insight, and judgment. Dr. McKenzie assigned a GAF score of 55 (Tr. 484–87), indicating only "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *See DSM-IV*.

As noted above, the ALJ appropriately considered Dr. Jones' opinion that Plaintiff's medical condition exacerbated her depression and contributed to her poor ability to concentrate and kept Plaintiff from being able to return to her PRW as an insurance agent/claims representative. Tr. 26; *see* Tr. 234. Further, the ALJ's limiting Plaintiff's RFC work to work in a low-stress environment with only occasional exposure to the general public accommodated Plaintiff's diminished ability to concentrate. Tr. 24, 27–28.

Additionally, in July 2006—which was the time of Dr. Jones' opinion—Dr. McKenzie noted that Plaintiff was able to sleep and that her mood was a six on a ten-point scale. Tr. 483. In March 2007, Dr. McKenzie found that she had only a "slightly" restricted affect. Tr. 480. In May 2007, Dr. McKenzie found that Plaintiff was sleeping better and that she had a non-depressed mood. Tr. 478–79.

Further, Plaintiff reported that she was able to drive and handle money. Tr. 119. She also reported that she had no difficulty focusing when watching television. Tr. 131. This evidence, too, supports the ALJ's findings regarding Plaintiff's RFC.

        2.      Substantial Evidence Supports the ALJ's Findings Regarding Plaintiff's Claimed Subjective Complaints.

The ALJ appropriately considered Plaintiff's claimed pain and other subjective complaints in making his finding that she was not disabled. *See* Tr. 24–26. "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, a threshold determination is made as to whether objective medical evidence shows the existence of a medical impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Then, the ALJ must evaluate the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). This evaluation must take into account not only the claimant's statements, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. *Craig*, 76 F.3d at 595. Inconsistencies between a claimant's testimony and other evidence may support a finding that the claimant is not fully credible. *See Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1993). Because an ALJ has the opportunity to observe the claimant's demeanor, the reviewing court should

give the ALJ's credibility determination "great weight." *See Shively v. Heckler*, 739 F.2d 987, 889 (4th Cir. 1984).

Here, the ALJ properly set out the standard he was to follow, found that Plaintiff's impairments could reasonably be expected to produce her alleged symptoms, and proceeded to evaluate all of the evidence in evaluating her credibility. Tr. 25. After evaluating all of the evidence, the ALJ found that Plaintiff's subjective complaints regarding the severity of her symptoms were not credible. Tr. 25–26.

In making these findings, the ALJ appropriately considered the objective medical evidence and found it did not support Plaintiff's subjective complaints. Tr. 25. The ALJ's findings are supported by substantial record evidence. The medical evidence, including the findings of Dr. Hadzijahic and Dr. Jones, is not consistent with the degree of physical symptoms and limitations Plaintiff alleged. For example, in November 2005, Dr. Hadzijahic found that Plaintiff had normal muscle tone. Tr. 178, 183–86. In January 2006, Dr. Jones found that she had no extremity clubbing, cyanosis, or edema. Tr. 147–48. He also found that she had no musculoskeletal deficits, her muscle bulk, tone, and strength were symmetrical, and that her RSD was under "reasonable" control. *Id.* In October 2006, Dr. Jones found that she had no musculoskeletal deficits and had symmetrical muscle bulk, strength, and tone Tr. 245–49.

As the ALJ also found, the medical evidence, including the findings of Dr. McKenzie, was not consistent with the degree of mental limitations that Plaintiff alleged. Tr. 25–26. In May 2006, Dr. McKenzie found that Plaintiff was neatly dressed, well-

groomed, and alert and oriented times four. Tr. 216–19. Although fidgety and with a restricted affect, Plaintiff's speech was normal, her mood was pretty positive, and her thought processes were logical. *Id.* She had intact cognition, abstractive abilities, memory, insight, and judgment. *Id.* In July 2006, Dr. McKenzie noted Plaintiff could sleep and her mood was a six on a ten-point scale. Tr. 483. Then, in March 2007, Dr. McKenzie found that Plaintiff's affect was only "slightly" restricted. Tr. 480. In May 2007, Dr. McKenzie noted Plaintiff was sleeping better and had a non-depressed mood. Tr. 478–79. The ALJ appropriately could find that Plaintiff's subjective complaints were not entirely credible as they were inconsistent with the objective medical evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c); SSR 96-7p.

The ALJ also properly considered that Plaintiff's symptoms improved with medications and other treatment and found that to undermine her credibility. Tr. 26. For example, in January 2006, Dr. Jones stated that Plaintiff's RSD was under "reasonable control." Tr. 147–48. In April 2006, Dr. Wooten noted that Plaintiff's leg pain was better for 20 hours following an epidural block injection, after which she had a slight decrease in her pain level over two weeks. Tr. 206–09. Then, in June 2006, Dr. Jones noted Plaintiff was "doing relatively well" on Avinza. Tr. 493. In July 2006, Plaintiff told Dr. McKenzie that she was able to sleep with Topamax. Tr. 483. In February 2007, Plaintiff reported decreased pain because of the medications. Tr. 481. Several months later, she reported better sleep while taking Ativan. Tr. 478–79. In August 2006, Plaintiff stated that medications helped her pain "a lot." Tr. 131. If a symptom can be controlled by medication

or other treatment, it is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

Finally, as the ALJ found, Plaintiff's daily activities did not support her allegations that her symptoms were so severe as to be disabling. Tr. 23, 25–26. In April 2006, Plaintiff reported that she was able to drive and handle money and that her activities of daily living were intact. Tr. 119. In August 2006, she stated that she drove short distances, did laundry, cleaned the kitchen, and performed light household chores. Tr. 131. At the hearing, she testified that she shared cooking duties with her husband and son, that she assisted in doing household chores, and that she went to the grocery store with her son. Tr. 35–36. Although Plaintiff's daily activities are not alone determinative of her RFC or credibility, the ALJ may appropriately consider that evidence along with the record evidence as a whole. *See Johnson*, 434 F.3d at 658 (accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating pain when she attended church, read, watched television, cleaned house, washed clothes, visited relatives, fed pets, cooked, managed finances, and performed stretching exercises); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) ("The only fair manner to weigh a subjective complaint is to examine how the pain affects the routine of life"); *Gross*, 785 F.2d at 1166 (affirming finding of no disability when claimant managed his household, grocery shopped, cooked, washed dishes, and walked to town each day). Here, the ALJ appropriately considered Plaintiff's testimony and other evidence of her daily activities in conjunction with all evidence in concluding that her limitations were not as severe as she alleged. Tr. 23, 25–26.

3.     The ALJ's Finding That Plaintiff Was Not Disabled Because She
       Could Perform a Significant Number of Jobs in the National Economy
       Is Supported by Substantial Evidence and Free of Legal Error.

The ALJ also appropriately considered whether someone with Plaintiff's RFC could perform work that existed in the national economy. After finding Plaintiff could not return to her PRW, the ALJ appropriately considered whether other work existed in significant numbers in the national economy that she could perform. Tr. 26–28. *See McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981).

In making that determination, the ALJ heard testimony from a VE at the hearing. At the hearing, the ALJ asked the VE whether a hypothetical person of Plaintiff's age, education, and work experience with the limitations the ALJ placed on Plaintiff's RFC could work at jobs that existed in sufficient numbers in the national economy. Tr. 40. The VE testified that such a person could perform the light, unskilled jobs of hand packer, United States Dep't of Labor*, Dictionary of Occupational Titles* (*DOT*) (4th ed. 1991), No. 920.687-166 (10,000 jobs in South Carolina and 375,000 jobs nationally); machine tender, *DOT* No. 920.685-086 (20,000 jobs in South Carolina and 800,000 nationally); and garment folder, *DOT* No. 789.687-066 (1,000 jobs in South Carolina and 39,000 jobs nationally). Tr. 40–41.

Relying on the VE's testimony, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. Tr. 28. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (noting a VE's testimony in response to a hypothetical question may

be relied upon if the hypothetical question accurately describes all of the claimant's limitations). Because Plaintiff could perform a significant number of jobs in the national economy, the ALJ properly found she was not disabled.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental and physical conditions, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under 42 U.S.C. §§ 405(g) and 1383(c)(3), the Commissioner's decision is affirmed.

IT IS SO ORDERED.

August 26, 2010                              Shiva V. Hodges
Florence, South Carolina                     United States Magistrate Judge